**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KURT KARNER, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>MGT CAPITAL INVESTMENTS, INC., and ROBERT B. LADD,<br><br>                    Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kurt Karner ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by MGT Capital Investments, Inc. ("MGT" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by MGT; and (c) review of other publicly available information concerning MGT.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired MGT securities between May 9, 2016, and September 20, 2016, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      MGT and its subsidiaries were historically engaged in the business of acquiring, developing, and monetizing assets in the online and mobile gaming space as well as the social casino industry.

3.      On or around May 9, 2016, the Company announced plans to merge with D-Vasive, Inc. a company purportedly offering cybersecurity solutions for cellphones and personal electronic devices. The closing of the merger was contingent on approval by MGT's stockholders.  The major terms of the deal included the payment to D-Vasive Inc. stockholders of 23.8 million restricted shares (which was later increased to 43.8 million) of MGT stock and $300,000 in cash.  The original proposed share issuance was expected to amount to roughly 47% of the Company on a pro-forma fully diluted basis at closing.  The merged company was to be led by John McAfee and was to be renamed John McAfee Global Technologies.

4.      Following the news of the proposed D-Vasive, Inc. merger, the Company's share price sharply increased in value on very high trading volume, to close on May 17, 2016 at $4.15

---

[1] "Defendants" refers to MGT and Robert B. Ladd.

per share.

5.      Then on September 19, 2016, the Company issued a press release announcing that on September 15, 2016 the Company had received a subpoena from the SEC requesting "certain information" from the Company.

6.      On this news, MGT's stock price fell $0.74 per share, or 22.7%, to close at $2.52 per share on September 19, 2016, on unusually heavy trading volume.

7.      On September 20, 2016, MGT issued a press release entitled "MGT Provides Update on Status of D-Vasive Acquisition."  Therein, the Company disclosed that the New York Stock Exchange ("NYSE") informed the Company on September 19, 2016, that the NYSE would not approve the listing of the 43.8 million shares that the Company was required to issue in order to complete the closing of its D-Vasive merger.

8.      On this news, MGT's stock price fell $0.63 per share, or 25%, to close at $1.89 per share on September 20, 2016, on unusually heavy trading volume.

9.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was engaging and/or had engaged in conduct that would result in an SEC investigation; (2) that the SEC investigation and the underlying conduct would cause the NYSE to refuse to list the Company's 43.8 million shares required for the D-Vasive merger; (3) that, as such, the D-Vasive merger would likely not be completed; and (4) that, as a result of the foregoing, Defendants' statements about MGT's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange

Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located within this judicial District

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Kurt Karner, as set forth in the accompanying certification, incorporated by reference herein, purchased MGT common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant MGT is a Delaware corporation with its principal executive offices located at 500 Mamaroneck Avenue, Suite 320, Harrison, NY 10528.  MGT's common stock trades on the NYSE MKT stock exchange (the "NYSE MKT") under the symbol "MGT."

17.     Defendant Robert B. Ladd ("Ladd") was, at all relevant times, President, Chief Executive Officer, Interim Treasurer, Interim Chief Financial Officer, and a Director of MGT.

18.     Defendant Ladd, because of his positions with the Company, possessed the power and authority to control the contents of MGT's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors,

*i.e.*, the market.  Ladd was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of his positions and access to material non-public information available to him, he knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  Ladd is liable for the false statements pleaded herein.

### SUBSTANTIVE ALLEGATIONS

### Background

19.    MGT and its subsidiaries were historically engaged in the business of acquiring, developing, and monetizing assets in the online and mobile gaming space as well as the social casino industry.

### Materially False and Misleading
### Statements Issued During the Class Period

20.    The Class Period begins on May 9, 2016.  On that day, MGT issued a press release entitled, "John McAfee Returns to Public Markets as MGT Capital Agrees to Acquire Security/Privacy Technology."  Therein, the Company, in relevant part, stated:

**HARRISON, NY (May 9, 2016)** MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that it has entered into a definitive asset purchase agreement to acquire certain technology and assets from D-Vasive Inc., a provider of leading edge anti-spy software. D-Vasive offers a powerful tool for protection from the proliferation of invasive apps by consumer products companies, social networks, financial institutions and others. These invasive apps can secretly turn on a phone's microphone and camera, as well as monitor geographic movements and access contacts. The D-Vasive technology operates in a unique way, allowing the user to manage and control the device's internal hardware. D-Vasive will be available shortly for Android and Windows platforms, followed by a release for Apple iOS.

In conjunction with the acquisition, MGT is pleased to announce the proposed appointment of John McAfee as Executive Chairman and Chief Executive Officer. Mr. McAfee, the visionary pioneer of internet security, sold his anti-virus company to Intel for $7.6 billion, and is actively involved in the development of new measures to protect individual freedoms and privacy. Mr. McAfee stated,

"The enormous impact of cybersecurity on our lives requires the scale and resources of a public company. Our ability to continue to hire the best minds in the business will be vastly enhanced with a public platform. With the acquisition of D-Vasive technology as a starting point, we expect to grow MGT into a successful and major force in the space." MGT Capital also intends to change its corporate name to John McAfee Global Technologies, Inc.

Additionally, MGT has entered into a consulting agreement with Future Tense Secure Systems Inc., a technology incubator with investments in other applications requiring privacy, such as file sharing and chat. It is contemplated by the parties that future collaborations or investments may occur going forward.

Closing of the acquisition is contingent on customary conditions including approval by MGT's stockholders. Major terms of the deal include the payment to D-Vasive Inc. stockholders of 23.8 million restricted shares of MGT stock and $300,000 in cash. The proposed share issuance is expected to amount to roughly 47% of the Company on a pro-forma fully diluted basis at closing. More detailed information can be found in the Company's Form 8-K filed this morning with the Securities and Exchange Commission, available at www.sec.gov, or the MGT website at www.mgtci.com.

21. On May 23, 2016, MGT issued a press release entitled "MGT Capital Reports Financial Results for the First Quarter ending March 31, 2016." Therein, the Company, in relevant part, stated:

HARRISON, N.Y., May 23, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT) reported financial results and operational developments for the fiscal first quarter ended March 31, 2016. Developments during the quarter and recent weeks subsequent to quarter end are as follows:

- MGT entered into a definitive asset purchase agreement to acquire certain technology and assets from D-Vasive Inc., a provider of leading edge anti-spy software. MGT also entered into a consulting agreement with Future Tense Secure Systems Inc., a technology incubator.

- In conjunction with the acquisition, MGT announced the proposed appointment of John McAfee as Executive Chairman and Chief Executive Officer. Mr. McAfee is the visionary pioneer of internet security whose anti-virus company was acquired by Intel for $7.7 billion. He is actively involved in the development of new measures to protect individual freedoms and privacy.

- Closing of the acquisition is contingent on customary conditions including approval by MGT's stockholders. The Company plans to issue a Preliminary Proxy Statement shortly.

- Adjusted for recent warrant exercises, MGT currently has 23.8 million common shares outstanding, and has cash of $2.0 million plus marketable securities of approximately $500,000. Moreover, MGT carries zero debt or preferred stock.

- In addition, the Company expects to continue to monetize certain securities it owns issued by DraftDay Fantasy Sports. Inc., and expects further warrant exercises. These potential sources of cash would add about $1.5 million to the Company's cash reserves. Pro–forma, following the closing of the D-Vasive acquisition, the company will have approximately 50 million shares outstanding, about half of which would be subject to resale restrictions.

- Cash used in operations was $376,000 in the first quarter of 2016, down 49% sequentially from the December 2015 quarter, and down 41% from the first quarter of 2015. Having significantly streamlined MGT's operational structure and minimized corporate overhead, the Company continues to exercise discipline with respect to its burn rate.

22.     On the same day, May 23, 2016, MGT filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended March 31, 2016.  The Company's Form 10-Q was signed by Defendant Ladd, and affirmed the Company's financial results announced in the press release issued the same day.

23.     On July 8, 2016, MGT issued a press release entitled, "MGT Files Proxy for Upcoming Meeting of Shareholders."  Therein, the Company, in relevant part, stated:

HARRISON, N.Y., July 8, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that it has filed the Preliminary Proxy Statement for its upcoming meeting of shareholders.  The document can be accessed via the Company's website, www.mgtci.com, or at www.sec.gov.

The Proxy includes information for stockholders to vote on the proposed issuance of shares to consummate the announced acquisitions of assets from D-Vasive, Inc. and Demonsaw LLC. In order to simplify these transactions, and meet certain customary tax issues, the two acquisitions have been effectively combined into one. This new structure was accomplished by D–Vasive purchasing Demonsaw, with MGT buying the combined company pending stockholder approval.  MGT will acquire the same agreed-upon assets and the sellers will have received the same agreed-upon consideration. The total number of MGT common shares to be issued to D-Vasive is 43,800,000 (equaling the earlier 23,800,000 for D-Vasive and 20,000,000 for Demonsaw).

Stockholders will also vote on the election of John McAfee as Executive Chairman of the Board, the Company's name change to "John McAfee Global Technologies, Inc.", along with other proposals. Subject to SEC review, and mandatory notice requirements, MGT's shareholder meeting is still expected to occur in August 2016.

John McAfee, MGT's proposed Executive Chairman and Chief Executive Officer, stated, "We are pleased to file the proxy for the upcoming shareholder meeting, at which our shareholders will vote on various proposals to implement the previously announced strategic shift in MGT's business. We are excited to move a step closer towards positioning the Company to address various cyber threats through advanced protection technologies for enterprise and personal tech devices."

MGT also announced that, effective immediately, it intends to use social media platforms, including Twitter and Facebook, under the usernames "@MGTCI," "@officialmcafee," "@MGTCI" and "@officialmcafee," as a means of disclosing information about the Company, its services and other matters and for complying with its disclosure obligations under SEC Regulation Fair Disclosure. The information the Company posts through these social media channels may be deemed material. Accordingly, investors should monitor these accounts in addition to following the Company's press releases, SEC filings and public conference calls and webcasts. This list of usernames and social media platforms may be updated from time to time. Please note that Mr. McAfee also uses "@officialmcafee" as a means for personal communications and observations. Also, MGT will continue to utilize its investor relations website, www.mgtci.com; press releases; SEC filings and public conference calls and webcasts to disclose material financial and operational information to investors.

24.     On August 15, 2016, MGT issued a press release entitled, "MGT Capital Files Definitive Proxy for Upcoming Shareholder Meeting."  Therein, the Company, in relevant part, stated:

HARRISON, N.Y., Aug. 15, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT), today announced that it has filed Form DEF 14A (Definitive Proxy Statement) with the U.S. Securities and Exchange Commission for its upcoming 2016 Annual Meeting of Stockholders. The meeting is now scheduled to take place on September 8, 2016 in order to provide shareholders adequate time to receive and review the proxy and vote their shares accordingly.
The Proxy Statement can be accessed via the Company's website or at www.sec.gov.

Shareholders as of the record date, July 28, 2016, will have the right to vote by proxy or in person at the Annual Meeting of Stockholders to be held Thursday, September 8, 2016 at 10:00 am Eastern Time at the offices of Sichenzia Ross

Friedman Ference LLP located at 61 Broadway, 32nd Floor, New York, NY 10006.

Shareholders of record will receive a notice containing instructions on how to access the shareholder meeting materials, including a proxy form and voting instruction form. Shareholders are urged to carefully review the proxy and accompanying materials as they contain important information regarding proposals being voted on at the shareholder meeting.

25.     On August 15, 2016, MGT filed a Definitive Proxy Statement with the SEC on

Schedule 14A.  Therein, the Company, in relevant part, stated:

> NOTICE IS HEREBY GIVEN that the 2016 Annual Meeting (the "Meeting") of the stockholders of MGT Capital Investments, Inc., a Delaware corporation (the "Company") will be held beginning at 10 a.m. EST on September 8, 2016, at the offices of Sichenzia Ross Friedman Ference LLP located at 61 Broadway, 32nd Floor, New York, NY 10006 for the following purposes:

> . . .

> 3.     To authorize the issuance of 43,800,000 shares ("Purchase Price Shares") of Common Stock to certain sellers ("Sellers") set forth on the signature page of that certain Asset Purchase Agreement, dated May 9, 2016, as amended July 7, 2016 (the "APA")(1), a copy of such amendment is attached as Annex A to this proxy statement pursuant to which the Company shall purchase certain assets from such Sellers in accordance with NYSE MKT Company Guide Section 712.

> *     *     *

> Acquisition of D-Vasive, Inc.

> We, through our wholly owned subsidiary, MGT Cybersecurity, Inc. entered into the APA to acquire certain assets related to the D–Vasive business (as defined below). D–Vasive, Inc., a Wyoming corporation, is in the business of developing and marketing of certain privacy and anti–spy applications (the "D–Vasive Business"). Pursuant to the terms of the APA, the Company has agreed to purchase assets ("Purchased Assets") integral to the D–Vasive Business, including but not limited to applications for use on mobile devices, intellectual property, customer lists, databases, sales pipelines, proposals and project files, licenses and permits. Among the Purchased Assets is 100% of the membership interest in Demonsaw LLC, a company that is developing and marketing certain secure and anonymous information sharing applications that provide user–configurable levels of secrecy, privacy and anonymity as well as the D–Vasive application which is designed for protection from invasive applications that seek access to personal contacts, cameras and other information on smart phones, tablets and other mobile devices.

Upon the closing of the transaction contemplated under the APA, the Company will acquire the Purchased Assets in consideration of (i) $300,000 (the "Closing Cash"), (ii) 8,760,000 unregistered shares of Common Stock of the Company (the "Escrow Shares") to be held in escrow for six months pending satisfaction of the representation and warranties in the APA; and (iii) 35,040,000 unregistered shares of Common Stock of the Company (the "Closing Shares" together with Escrow Shares the "Purchase Price Shares"). The Closing Cash, the Escrow Cash and Closing Shares are collectively referred to as the "Purchase Price".

As a result of the APA, we will have acquired 100% of the common stock of D-Vasive and consequently, control of the business and operations of D-Vasive. D-Vasive is deemed the accounting acquirer while the Company remains the legal acquirer. The fair value of the net assets acquired such as, the goodwill and intangible assets were written off.

D–Vasive has also acquired all of the membership interest of Demonsaw LLC, a company that is developing and marketing certain secure and anonymous information sharing applications that provide user–configurable levels of secrecy, privacy and anonymity.

26.     On August 15, 2016, after the market closed, MGT filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended June 30, 2016.  The Company's Form 10-Q was signed by Defendant Ladd.  Therein, the Company, in relevant part, stated:

On May 9, 2016 we, through our wholly owned subsidiary, MGT Cybersecurity, Inc. entered into an Asset Purchase Agreement (the "D–Vasive APA") to acquire certain assets related to the D–Vasive business (as defined below). D–Vasive, Inc., a Wyoming corporation, is in the business of developing and marketing of certain privacy and anti–spy applications (the "D–Vasive Business"). Pursuant to the terms of the D–Vasive APA, the Company has agreed to purchase assets ("D–Vasive Assets") integral to the D–Vasive Business, including but not limited to applications for use on mobile devices, intellectual property, customer lists, databases, sales pipelines, proposals and project files, licenses and permits. Among the Purchased Assets is the D–Vasive application which is designed for protection from invasive applications that seek access to personal contacts, cameras and other information on smart phones, tablets and other mobile devices. The Company intends to change its corporate name to "John McAfee Global Technologies, Inc." upon closing of the D–Vasive transaction.

27.     On August 16, 2016, MGT issued a press release entitled, "MGT Provides Quarterly Corporate Update."  Therein, the Company, in relevant part, stated:

HARRISON, N.Y., Aug. 16, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT) today provided an update on its business and pending

acquisitions, as well as its unaudited financial results for the three-month period ended June 30, 2016.

"In the second quarter the Company made significant progress implementing a multi-pronged strategy that has transformed MGT Capital Investments into the innovative cybersecurity company that we envisioned. With the broad set of differing technologies supporting the foundation of today's society, it is important that the cybersecurity protecting these technologies be just as diverse and forward thinking. This concept is the heart of the Company as we focus on developing cybersecurity technologies that protect the rapidly expanding Internet of Things, the Cloud, and mobile computing platforms," said John McAfee, the Company's proposed Executive Chairman and Chief Executive Officer.

"The upcoming shareholder vote on September 8th will allow the Company to move forward on several of the proposed events, including acquiring technologies from D-Vasive and Demonsaw, and the rebranding of the Company to 'John McAfee Global Technologies, Inc.' The details of these proposals are provided in the Definitive Proxy Statement filed by the Company with the SEC yesterday. In the meantime, the Company and its targeted acquisitions are moving ahead with the development and launch of several products."

**Recent Product Highlights:**

- Launch of Demonsaw 3.0, a secure and decentralized cross-platform information-sharing application with end-to-end encryption and without client P2P.

- Announced development of Clear Skies, a revolutionary new platform designed to allow a company to implement a layer of security for data stored in the Cloud, which is powered by the Demonsaw technology.

- Introduced Sentinel MGT, a cybersecurity product designed to protect corporate and enterprise intranets from sophisticated hacking threats, based on technology purchased from Cyberdonix.

- Assumed the development and ownership of e-Tagged technology, a cyber security product designed to alert and detect the identity of approaching individuals and vehicles.

**Recent Corporate Highlights:**

- Appointed technology pioneer, Nolan Bushnell, as an independent member of the Company's Board of Directors

- Established several advisory boards to guide development across different market segments

○ Hacker Advisory Board was established to help steer the Company's technology in the ever changing field of cyber security threats, with members that include world renowned hackers Chris Roberts, Bryce Case, Alexander Heid, Bryan Seely and Vinny Troia.

○ Cryptocurrency Advisory Board was established to ensure MGT provides the most state of the art products to its customers, and includes members such as Roger Ver, aka "Bitcoin Jesus," Erik Voorhees and Bruce Fenton.

○ Emerging Large Scale Technology Advisory Board established to support cybersecurity products that address the needs of the intricate field of securing critical large scale cyber systems and its increasing connection to, and dependence on mobile devices, with members that include Steve Orenberg, former President of Kaspersky Labs.

**Financial Highlights for the second quarter of 2016**

Cash used in operations was $2.1 million in the second quarter of 2016, an increase of $1.7 million, as compared to the quarter ended March 31, 2016. The increase was primarily driven by legal and professional fees incurred in connection with the proposed D-Vasive acquisition. Such costs are expected to be materially lower in the current quarter as well as next quarter.

Cash and cash equivalents were $1.1 million as of June 30, 2016, compared with $0.3 million as of December 31, 2015. Post quarter-end, the Company completed an offering of unsecured promissory notes with net proceeds of $2.1 million. As of August 15, 2016, the Company has $2.9 million in cash plus $1.7 million in marketable securities.

Financial Results follow; per GAAP requirements, the operations of DraftDay.com are treated as discontinued operations. For further information, please refer to MGT's Form 10-Q filed this morning with the SEC, and available at the Company's corporate website, www.mgtci.com, or at www.sec.gov.

28.     On September 9, 2016, MGT issued a press release entitled, "MGT Capital Shareholders Approve All Proposals at the 2016 Annual Meeting." Therein, the Company, in relevant part, stated:

HARRISON, N.Y., Sept. 9, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT), today announced that its shareholders approved all eight proposals voted on today at the Company's 2016 Annual Meeting of

Stockholders.

"We are pleased to have received overwhelming shareholder approval for the proposals at this year's annual meeting of stockholders, including the proposals that allow the Board of Directors to move ahead with our plans to transition into an innovative cybersecurity company. We will be able to execute upon these activities and implement the next phase of our strategy, bringing us one step closer to becoming a game-changing force in the cybersecurity industry," stated John McAfee, Executive Chairman of MGT.

The approved proposals include:

- Authorizing the issuance of 43,800,000 shares of Common Stock in relation to the proposed acquisition of D-Vasive and Demonsaw;

- Ratification of the employment agreements for Mr. John McAfee and Mr. Robert Ladd;

- Ratification of the amendment to the Company's Restated Certificate of Incorporation to change its name to "John McAfee Global Technologies, Inc."

All eight proposals are described in detail in MGT's definitive proxy statement for the meeting, which was filed with the Securities and Exchange Commission on August 15, 2016. The proxy can be accessed via the Company's website,www.mgtci.com or at www.sec.gov.

29.     On September 14, MGT issued a press release entitled, "MGT Capital Clarifies and Corrects Shareholder Vote Results."  Therein, the Company, in relevant part, stated:

HARRISON, N.Y., Sept. 14, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT) yesterday filed a Form 8-K Current Report with the Securities and Exchange Commission to report the results of its Annual Meeting held on September 8, 2016. Due to tabulation errors by professional third parties that administer the proxy voting process, MGT is forced to correct two errors in its September 9, 2016 press release.

Specifically, the proposal to amend the Company's restated certificate of incorporation to increase the amount of authorized common stock from 75,000,000 shares to 250,000,000 shares was not approved, even though the proposal garnered 84% of the votes cast. The specific reason in that the total number of votes did not reach the 50.1% threshold as required by Delaware law. Furthermore, so-called "broker non-votes" were excluded from the tally.

There is no immediate impact due to this change as the Company's current authorized share count is adequate to issue the 43.8 million shares contemplated

by the stockholder approved D-Vasive acquisition.

Secondly, the proposal to ratify an amendment to the Company's restated certificate of incorporation to change its name to "John McAfee Global Technologies, Inc." was not approved for the same reasons, despite 99% of the votes cast being in favor of the change.

However, a name change by a Delaware company does not require shareholder ratification, and given the overwhelming support by those voting, the Company's board of directors will proceed with such change.

The six other proposals, including electing John McAfee to the board of directors as Executive Chairman passed as previously disclosed.

30.     The above statements contained in ¶¶20-29 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company was engaging and/or had engaged in conduct that would result in an SEC investigation; (2) that the SEC investigation and the underlying conduct would cause the NYSE to refuse to list the Company's 43.8 million shares required for the D-Vasive merger; (3) that, as such, the D-Vasive merger would likely not be completed; and (4) that, as a result of the foregoing, Defendants' statements about MGT's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

31.     On September 19, 2016, the Company issued a press release entitled "MGT Receives Subpoena From Securities and Exchange Commission. No Indication That the Company is the Subject of Any Enforcement Proceedings." Therein, the Company, in relevant part, disclosed:

HARRISON, N.Y., Sept. 19, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that on September 15, 2016, it received a subpoena from the Securities and Exchange Commission requesting certain information from the Company. MGT has no indication or reason to believe that the Company is or will be the subject of any enforcement proceedings. The Company is fully cooperating to comply with the SEC's request.

32.     On this news, MGT's stock price fell $0.74 per share, or 22.7%, to close at $2.52 per share on September 19, 2016, on unusually heavy trading volume.

33.     On September 20, 2016, MGT issued a press release entitled "MGT Provides Update on Status of D-Vasive Acquisition."  Therein, the Company in relevant part, stated:

> HARRISON, N.Y., Sept. 20, 2016 /PRNewswire/ -- MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that the New York Stock Exchange informed the Company late yesterday afternoon that it will not approve the listing on the Exchange of the 43.8 million shares that the Company is required to issue in order to complete the closing of the D-Vassive [sic] merger. The Company and John McAfee remain committed to closing the transaction and are exploring alternatives.
>
> Mr. McAfee stated, "We are determined to consummate a transaction that brings our cybersecurity technologies to market in order to solve the pressing privacy and security issues that society faces."

34.     On this news, MGT's stock price fell $0.63 per share, or 25%, to close at $1.89 per share on September 20, 2016, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired MGT's securities between May 9, 2016, and September 20, 2016, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MGT's common stock actively traded on the NYSE MKT.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of MGT shares were traded publicly during the Class Period on the NYSE MKT.  As of August 12, 2016, MGT had

25,857,855 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by MGT or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of MGT; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

41.    The market for MGT's securities was open, well-developed and efficient at all

relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, MGT's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired MGT's securities relying upon the integrity of the market price of the Company's securities and market information relating to MGT, and have been damaged thereby.

42.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of MGT's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about MGT's business, operations, and prospects as alleged herein.

43.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about MGT's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

44.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

45.     During the Class Period, Plaintiff and the Class purchased MGT's securities at

artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

46.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Ladd, by virtue of his receipt of information reflecting the true facts regarding MGT, his control over, and/or receipt and/or modification of MGT's allegedly materially misleading misstatements and/or their associations with the Company which made him privy to confidential proprietary information concerning MGT, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

47.     The market for MGT's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, MGT's securities traded at artificially inflated prices during the Class Period.  On July 7, 2016, the Company's stock price closed at a Class Period high of $4.37 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of MGT's securities and market information relating to MGT, and have been damaged thereby.

48.     During the Class Period, the artificial inflation of MGT's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about MGT's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of MGT and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

49.     At all relevant times, the market for MGT's securities was an efficient market for the following reasons, among others:

(a)     MGT stock met the requirements for listing, and was listed and actively traded on the NYSE MKT, a highly efficient and automated market;

(b)     As a regulated issuer, MGT filed periodic public reports with the SEC and/or the NYSE MKT;

(c)     MGT regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     MGT was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for MGT's securities promptly digested current information regarding MGT from all publicly available sources and reflected such information in MGT's stock price. Under these circumstances, all purchasers of MGT's securities during the Class Period suffered similar injury through their purchase of MGT's securities at artificially inflated prices and a presumption of reliance applies.

51.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of MGT who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase MGT's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

55.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for MGT's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about MGT's financial well-being and prospects, as specified herein.

57.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of MGT's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state

material facts necessary in order to make the statements made about MGT and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.     Ladd's primary liability, and controlling person liability, arises from the following facts: (i) the he was a high-level executive and/or directors at the Company during the Class Period and a member of the Company's management team or had control thereof; (ii) he, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) he was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) he was aware of the Company's dissemination of information to the investing public which he knew and/or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing MGT's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.     As a result of the dissemination of the materially false and/or misleading

information and/or failure to disclose material facts, as set forth above, the market price of MGT's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired MGT's securities during the Class Period at artificially high prices and were damaged thereby.

61.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that MGT was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their MGT securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against Defendant Ladd**

64.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    Ladd acted as a controlling person of MGT within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of his high-level position, and his ownership

and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Ladd had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Ladd was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.    In particular, Ladd had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.    As set forth above, MGT and Ladd each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of his position as a controlling person, Ladd is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:  September 22, 2016                    **GLANCY PRONGAY & MURRAY LLP**


                                              By: _s/ Lesley F. Portnoy_
                                              Lesley F. Portnoy (LP-1941)
                                              122 East 42nd Street, Suite 2920
                                              New York, New York 10168
                                              Telephone: (212) 682-5340
                                              Facsimile: (212) 884-0988
                                              lportnoy@glancylaw.com

                                                     -and-

                                              Lionel Z. Glancy
                                              Robert V. Prongay
                                              Casey E. Sadler
                                              Charles H. Linehan
                                              1925 Century Park East, Suite 2100
                                              Los Angeles, CA 90067
                                              Telephone:  (310) 201-9150
                                              Facsimile:   (310) 201-9160

                                              *Attorneys for Plaintiff Kurt Karner*

## SWORN CERTIFICATION OF PLAINTIFF

## MGT CAPITAL INVESTMENTS, INC. SECURITIES LITIGATION

I, Kurt Karner, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase **MGT CAPITAL INVESTMENTS, INC.,** the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in **MGT CAPITAL INVESTMENTS, INC.** during the Class Period set forth in the Complaint are as follows:

        (See Attached Transactions)

5.      I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

DocuSigned by:

_Kurt Karner_

18E4507DD1954CA...

9/20/2016

_____                                  _____
        Date                                                          Kurt Karner

**Kurt Karner's Transactions in**
**MGT Capital Investments, Inc. (MGT)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 09/13/2016 | Bought | 34,000 | $3.5000 |