UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
IN RE:
    MGT CAPITAL INVESTMENTS, INC.
    SECURITIES LITIGATION                **MEMORANDUM AND ORDER**
-----------------------------------
JOHN EXLEY,
                                  16 Civ. 7415 (NRB)
          Plaintiff,

       - against -

MGT CAPITAL INVESTMENTS, INC. and
ROBERT B. LADD,

          Defendants.
-----------------------------------
KURT KARNER,
                                  16 Civ. 7423 (NRB)
          Plaintiff,

       - against -

MGT CAPITAL INVESTMENTS, INC. and
ROBERT B. LADD,

          Defendants.
-----------------------------------
STEPHEN MAYER,
                                  16 Civ. 7449 (NRB)
          Plaintiff,

       - against -

MGT CAPITAL INVESTMENTS, INC.,
ROBERT B. LADD, and JOHN MCAFEE,

          Defendants.
-----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    The above-captioned class actions were filed in September
2016 on behalf of investors who purchased or otherwise acquired

securities of defendant MGT Capital Investments, Inc. ("MGT" or the "Company") during the period May 9, 2016 through September 20, 2016, inclusive (the "Class Period"). The actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

According to plaintiffs, MGT operates mobile and online gaming sites, including fantasy sports wagering platforms and casino games. On May 9, 2016, MGT announced that it was acquiring the assets of the internet security app startup D-Vasive, Inc. ("D-Vasive" and the "D-Vasive Acquisition"), whose controlling entity was founded by cyber security pioneer John McAfee ("McAfee"). MGT was to purchase D-Vasive for cash and 23.8 million shares of newly issued MGT stock, and McAfee was to become the Executive Chairman and Chief Executive Officer of MGT. On May 26, 2016, MGT announced that it would also acquire Demonsaw LLC ("Demonsaw"). MGT agreed to issue another 20 million shares of its common stock to acquire Demonsaw (the "Demonsaw Acquisition," and with the D-Vasive Acquisition, the "Acquisitions"). The Demonsaw Acquisition was to close at the same time, and in conjunction with, the D-Vasive Acquisition.

MGT's stock value surged following the announcements of the Acquisitions, and MGT shareholders were assured that McAfee would deliver significant returns once at the helm. On September 19,

2

2016, however, MGT announced that it had received a subpoena from the SEC days earlier, requesting certain undisclosed information. MGT's stock plunged on the news. The next morning, MGT disclosed that the New York Stock Exchange ("NYSE") was refusing to list the newly issued stock of MGT required to complete the Acquisitions. MGT shares tumbled further on this news.

Plaintiffs allege that throughout the Class Period defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about MGT's business, operations and prospects, including regarding (1) the risk that its stock to be issued in connection with the Acquisitions might not be listed by the NYSE; and (2) that MGT was under inquiry by the SEC prior to September 19, 2016. As a result, plaintiffs claim they suffered significant losses.

The first of these actions was filed on September 22, 2016, and early notice meeting the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") was published the same day on Globe Newswire. See Decl. of Jeffrey C. Block in Support of Mot. of Jalmar Araujo, Ex. A (ECF No. 8[1]); 15 U.S.C. § 78u-4(a)(3)(A).

---

[1] Docket references are to the docket for the Exley action, 16-cv-7415, unless otherwise specified.

Four groups of plaintiffs filed timely motions for appointment as lead plaintiff(s) and appointment of lead counsel.[2] One of these plaintiffs, Paul Skittone, subsequently withdrew his motion.  Movants Kurt Karner and Mark Waters, who filed a motion for appointment as co-lead plaintiffs, subsequently filed a notice of non-opposition to the appointment of Danny T. Nguyen ("Nguyen") and Song Suh ("Suh") (collectively, "Nguyen and Suh") as lead plaintiffs and their selection of Pomerantz LLP ("Pomerantz") as lead counsel,[3] stating that Nguyen and Suh appeared to possess the largest financial interest in the relief sought by the class and to preliminarily satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure, as required by the PSLRA.   Notice of Non-Opposition (ECF No. 19). Only Araujo opposes the appointment of Nguyen and Suh and their choice of counsel.   All of the movants also request consolidation of the three above-captioned actions.

For the reasons set forth below, we consolidate the three class actions, appoint Nguyen and Suh as lead plaintiffs, and appoint Pomerantz as sole lead counsel.

---

[2] These groups are: (1) Danny T. Nguyen and Song Suh, see ECF No. 11; (2) Kurt Karner and Mark Waters, see ECF No. 14; (3) Jalmar Araujo, see ECF No. 6; and (4) Paul Skittone, see ECF No. 9.

[3] Nguyen and Suh actually moved for appointment of both Pomerantz and Goldberg Law PC as co-lead counsel, but Karner and Waters' non-opposition mentioned only Pomerantz.

## DISCUSSION

### I.   Consolidation

As the related securities class actions contain the same factual and legal issues, we consolidate them under Rule 42(a) of the Federal Rules of Civil Procedure.   See Atwood v. Intercept Pharm., Inc., 299 F.R.D. 414, 415 (S.D.N.Y. 2014).   All relevant filings and submissions shall be maintained as one file as case number 16 Civ. 7415 (NRB) with the caption In re MGT Capital Investments, Inc. Securities Litigation.

### II.   Appointment of Lead Plaintiff

The PSLRA requires the appointment of a lead plaintiff and lead plaintiff's counsel in any "private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1), (3).   Following the publication of notice and the close of the period for motions to be appointed lead plaintiff, the court "shall appoint as lead plaintiff the member . . . of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members," known as the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

A plaintiff or group of plaintiffs is entitled to a presumption that it is the most adequate plaintiff if it (i) has brought the motion for lead counsel in response to the publication of notice; (ii) has the "largest financial interest in the relief

5

sought by the class"; and (iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). An investor who seeks to be appointed lead plaintiff only needs to make a preliminary showing that it satisfies the requirements of Fed. R. Civ. P. 23. Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001); see also In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001) (noting that "[t]he initial inquiry . . . should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy."). The presumption of adequacy "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## A. Financial interest

The PSLRA is not explicit as to how a court should determine which plaintiff has the "largest financial interest" in the relief sought by the class. Courts in this Circuit have considered (1) the total or gross number of shares purchased during the class period; (2) the number of shares purchased during the class period, net of sales during the class period; (3) the net funds expended during the class period; and (4) the approximate losses suffered. See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust

6

v. LaBranche & Co., 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (relying on Lax v. First Merchants Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (Aug. 11, 1997)). We, as other courts, shall place the greatest emphasis on the last of the four factors—the approximate loss suffered by the movant—which corresponds most directly to the "relief sought by the class." See Teran v. Subaye, Inc., Nos. 11-cv-2614 (NRB), 11-cv-3886 (NRB), 2011 WL 4357362, at *2 (S.D.N.Y. Sept. 16, 2011) (citing cases). In assessing the potential lead plaintiffs' financial interests, we may consider the financial interest of a group of plaintiffs in the aggregate if the group "will be able to function cohesively and to effectively manage the litigation apart from their lawyers." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).

Here, no one, including Araujo, disputes that Nguyen and Suh have a larger financial interest than any other movant. See Araujo Br. in Opp., at 3 (ECF No. 20) ("Araujo does not dispute that . . . Nguyen and Suh . . . have larger losses than him."); Notice of Non-Opposition by Kurt Karner and Mark Waters, at 1 (ECF No. 19). The various movants have used different methods, flawed in some respects, to calculate their losses, requiring some effort to analyze and compare the data. However, having sorted through those data, we are satisfied that Nguyen and Suh have the largest losses attributable to the alleged misconduct, even after correcting for

problems with their calculations.[4]   Accordingly, we find that
Nguyen and Suh have the largest financial interest in the relief
sought by the class.

We also find that Nguyen and Suh "will be able to function
cohesively and to effectively manage the litigation apart from
their lawyers." Varghese, 589 F. Supp. 2d at 392.  While they had
no  relationship  before  this  litigation,  they  are  not  a
prohibitively large group (indeed, they are the smallest possible
group), and they have submitted a joint declaration attesting to
their  ability  and  willingness  to  coordinate  to  effectively
represent the class.  Moreover, there is no evidence that any other
movants are more sophisticated about financial matters than Nguyen
and Suh, who have chosen able and reputable counsel in Pomerantz.
Finally, we reject Araujo's attempt to find something nefarious in
the choice of Suh's counsel to redact the latter's transactions in

---

[4] These problems are namely the following.   First, Nguyen included losses
suffered on a sale of 2,478 shares of MGT stock on August 8, 2016, for $8,376
total, among his relevant losses, even though the announcements relating to the
alleged misrepresentations did not occur until September 19 and 20, 2016.
Losses on such "in and out" sales are not attributable to the alleged
misrepresentations and should therefore not be considered.  Second, Nguyen and
Suh use the 59-day mean MGT share price from September 21, 2016 to November 28,
2016 -- $1.6561 -- to measure the value of their retained shares for purposes
of measuring their loss.  This approach likely overestimates the extent of their
losses attributable to defendants' alleged misconduct since we assume for
purposes of this motion (consistent with plaintiffs' allegations) that a
reasonably efficient market existed in MGT stock that likely would have priced
in the September 19 and 20 disclosures relatively quickly, and since MGT's share
price continued to decline over that subsequent 59-day period.   (Karner and
Waters' initial submission had a similar, larger problem in that they claimed
a 100% loss on their investment, which they held on to.  See Karner and Waters
Mot. at 5, Ex. C (ECF No. 14).)
        We also note that Nguyen alone appears to have larger attributable losses
than Araujo.

8

MGT stock from the face of his certification and instead include the transactions on a separate, attached page. Suh's counsel has provided a benign explanation for this choice – a desire to present Suh's transactions clearly and consistently with the way Nguyen's were presented. See Nguyen and Suh Reply Br., at 5-6 (ECF No. 23). While the redaction may not have been the best way to achieve that end, we take the attached transactions to represent Suh's sworn representation as to his relevant transactions, and reject the attempt to discredit this evidence.

## B. Typicality and adequacy

We further find that Nguyen and Suh have made a prima facie showing of typicality and adequacy. The record indicates that their claims are typical of the class's, and as discussed above, they have demonstrated their adequacy as lead plaintiffs. For the reasons stated above, we reject Araujo's suggestion that the redactions in Suh's certification open him up to unique defenses.

## III. Motion for Appointment of Co-Lead Counsel

The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting In re Cendant Corp. Litig., 264 F.3d at 276).

Pomerantz has ample experience on behalf of securities fraud plaintiffs to represent the putative class at this stage.  Nguyen and Suh originally requested that Goldberg Law PC be appointed as co-lead counsel with Pomerantz.  This Court, expressing concern that having two firms serve as co-lead counsel could result in a duplication of effort and the incurrence of unnecessary attorneys' fees, requested an explanation of why two law firms were necessary. In response, Goldberg Law offered to withdraw its application to serve as co-lead counsel.  Ltr. from J. Lieberman to Court, Feb. 28, 2017 (ECF No. 26).  Accordingly, we designate Pomerantz as sole lead counsel.

## CONCLUSION

For the foregoing reasons, the motion of Danny T. Nguyen and Song Suh to be appointed lead plaintiffs in the above-captioned cases, which are consolidated as In re MGT Capital Investments, Inc. Securities Litigation, is granted.  Their motion for appointment of lead counsel is granted insofar as we appoint Pomerantz LLP as lead counsel, but denied insofar as they request appointment of Goldberg Law PC as co-lead counsel.  Nguyen and Suh's counsel are hereby ordered to submit, after consulting with defense counsel, a proposed order regarding the next steps in this case within two weeks of the date of this filing.

The Clerk of Court is directed to close all open motions and letter motions in the above-captioned cases.

**SO ORDERED.**

Dated:     New York, New York
           April 11, 2017

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE